HOSKINS *v.* McLAUGHLIN, ADMINISTRATOR.

4-6714                                                 161 S. W. 2d 395

Opinion delivered April 13, 1942.

*John D. Hoskins, Lloyd E. Darnell* and *James R. Campbell,* for appellant.

*Richard M. Ryan,* for appellee.

MEHAFFY, J.   The appellant, John D. Hoskins, on May 14, 1941, filed in the probate court a statement of account against the estate of W. S. Jacobs, deceased.   He alleged that in the purchase of the property from the appellant, shown by a quitclaim deed, an agreement was made and entered into that the purchase price should be held in trust for the appellant, payable to him on demand. It was further set out in the statement filed that certain improvement taxes, attorney claims and other matters have been paid in the sum of $1,494, and that after properly crediting the purchase price with these credits, there was due a trust fund of $2,651 to appellant.

The administrator filed a motion to dismiss alleging that the claim has been disapproved by the administrator, and that the probate court was not the proper forum in which to file said claim, and that the probate court had no power to declare a trust as against the estate of W. S. Jacobs.

When the case came on for trial, the court permitted the appellant to strike out of the claim the statement that the purchase price should be held in trust for appellant, and permitted appellant to file his demand as a claim against the estate.

It was alleged in appellant's statement that the deed is predicated upon an oral agreement between appellant and W. S. Jacobs before the latter's death to the effect that W. S. Jacobs would pay the improvement district taxes, advance all costs in a case then about to be prosecuted in the United States Circuit Court of Appeals by the appellant, and pay the balance of the purchase money

to appellant when he returned from a Texas hospital which institution did not permit the patients to have any money in their possession. The claim was disallowed by the administrator, Leo P. McLaughlin, and the probate court, on October 31, 1941, handed down the decision disallowing the claim, and holding that the testimony was insufficient to sustain the claim. W. S. Jacobs paid the improvement district taxes and advanced practically all the court costs involved in the case before the United States Circuit Court of Appeals before his death.

From the judgment of the court disallowing the claim, appellant prosecutes appeal to this court, and the case is now here on appeal.

John D. Hoskins, the appellant, testified that he was the owner of certain lots in the city of Hot Springs; that he acquired the property by commissioner's deed in chancery court; that he had tried to sell the lots several times, but never asked less than $4,500 for the property; that he was in very poor health at the time the property was conveyed to W. S. Jacobs; he was in the hospital from June 18, 1940, until the 30th day of April, 1941, except for a few days; a reduction was realized on the street improvement district lien; Mr. Averill drove the appellant and Mr. Jacobs out to look at the property; Mr. Jacobs looked at it from the car; appellant and Jacobs had been friends for years, and in 1925 appellant deeded all of his property to Jacobs; he placed great trust in Mr. Jacobs.

Dr. W. H. Connell testified that the appellant approached him concerning a sale of the property in question sometime in 1940. Mr. Eisele testified to the same effect.

Mr. E. C. Ellsworth testified that he had been engaged in the real estate business in Hot Springs for thirty years; and that the property was worth about $30 per foot, and that there was a 150-foot frontage.

Jay Rowland testified that he was an attorney in the United States Circuit Court of Appeals case; John Morris, Mr. Jacobs' secretary, gave him a check for $35 and another one for $295 for costs incurred in the afore-

mentioned case; talked to Mr. Jacobs about this matter, once on the phone and once at the court house; Jacobs assured him that all costs would be paid.

Mr. Ray Smith testified that the improvement district lien taxes were satisfied.

Charles Averill, a Red Top taxi driver, testified that he drove Mr. Jacobs and Mr. Hoskins out to view the property in June, 1940; did not hear anything of the conversation, although there was no partition in the taxi.

Mr. Ed H. Coulter testified that he was an attorney of Little Rock; that he met with Mr. Jacobs and Mr. Hoskins at the latter's request in Hot Springs at the Southern Grill on June 16, 1940; Mr. Hoskins sought to employ him in the case about to be prosecuted in the United States Circuit Court of Appeals, but such employment was declined by witness until he could be assured that the necessary finances were forthcoming; at this meeting Jacobs assured witness that the money for the appeal was available; that Mr. Hoskins had sold him some lots for $4,500, and that he would advance the court costs and some other expenses; that Jacobs did pay all costs and expenses with the exception of the last check, at which time Jacobs was ill; Jacobs stated in witness' presence that the balance of the purchase money was to be paid to Mr. Hoskins when Hoskins returned from the Texas hospital; witness had never represented the appellant before, and declined this employment until the costs were assured; Mr. Jacobs told witness that Mr. Hoskins had made arrangements with him for the financing of the appeal; that Hoskins had deeded him his property; it was strictly a business proposition.

The deed from Hoskins to Jacobs was a quitclaim deed, and the consideration is named as $1 and "other good and valuable consideration."

There is no evidence in the record showing that Jacobs or his estate was indebted to Hoskins in any sum. There is this stipulation on page 33 of the transcript: "It is stipulated by the counsel for the estate and counsel for the claimant that there is recorded in book 235, page 329 of the Records of Deeds and Mort-

gages of Garland county a deed from John D. Hoskins to W. S. Jacobs, dated June 13, 1940, for the property in controversy here, and it is introduced here in evidence without setting the deed out at length.''

The deed mentioned is a quitclaim deed and the consideration named is $1 and other good and valuable considerations. There is no intimation in the deed anywhere that Jacobs owed Hoskins anything. Undoubtedly, if the consideration had been $4,500 or any other specific sum, it would have been mentioned in the deed.

We think it clearly appears from the evidence that all that the clause ''other good and valuable considerations'' can mean, was the payments of the costs in the federal court, and this was done. Certainly there is nothing in the evidence indicating that the clause meant additional money.

In the case of *Cal. Cons. Mining Co.* v. *Manley,* 10 Idaho 786, 81 P. 50, the Supreme Court of Idaho said: ''The recital of the money consideration of $1 explains itself, but the further recital as to 'other good and valuable consideration' means nothing, and would be given no weight in the absence of evidence explaining the nature and character of that consideration.''

It is not necessary, to constitute a sale, that the contract specifically state the price to be paid for the property. The price need not be definitely fixed if the agreement contains express or implied provisions by which it may be rendered certain. *Memphis Furn. Mfg. Co.* v. *Wemyss Furn. Co.,* 2 F. 2d 428; *Senter* v. *Senter, et al.,* 87 O. St. 377, 101 N. E. 272.

There is nothing in Mr. Coulter's testimony or in that of any other witness that shows that the estate of W. S. Jacobs is indebted in any sum whatever to Hoskins.

When appellant first filed his claim, his contention was that Mr. Jacobs had promised to pay him in trust, but he changed that, struck out that part of his statement, and filed simply a claim against the Jacobs' estate. It is said that the administrator recognized the indebtedness, and paid a claim. There is no evidence in the record

showing that the administrator ever recognized any indebtedness except Jacobs' promise to pay the costs in the federal court, and the claim that the administrator paid was presented to Jacobs before his death, but he was unable to sign this check for costs in the federal court.

As to whether the estate of Jacobs was indebted to the appellant in any sum was purely a question of fact, and the finding of the court is not against the preponderance of the evidence. In fact, as we have already said, there is no evidence of any indebtedness by the Jacobs' estate to Hoskins, and the judgment is therefore affirmed.